**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EDWARD WARGO,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.: 1:25-cv-14133

Judge Robert W. Gettleman

Magistrate Judge Beth W. Jantz

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**<u>RENEWED MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT</u>**
**<u>AGAINST THE DEFENDANTS IDENTIFIED IN FIRST AMENDED SCHEDULE A</u>**

Plaintiff, EDWARD WARGO ("Wargo" or "Plaintiff"), submits the following memorandum in support of Plaintiff's Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified in First Amended Schedule A (collectively, the "Defaulting Defendants") based on Plaintiff's action for Copyright Infringement (Count I). Excluded from this motion are Defendants who have settled with Plaintiff.

Plaintiff is the owner of the Copyright Registrations that protects the creative content of the Edward Wargo Works. Complaint [1] at ¶ 8. Wargo is a freelance artist who abides by the philosophy "whatever it takes," meaning he will incorporate any medium, such as pencils, pastels, markers, or computer to capture his vision. *Id.* Growing up in an old house filled with old things, including antiques, memorabilia, old signs, magazines, and advertisements, he tends to gravitate toward those things in his life and art. *Id.* Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Edward Wargo Works. *Id.* at ¶ 9. Thus, the Edward Wargo Products and Works are widely recognized and exclusively associated by consumers, the public, and the trade as being associated with and authorized by Wargo. *Id.*

The success of the Edward Wargo Works are due in large part to Plaintiff's marketing, promotional, and distribution efforts. *Id.* at ¶ 13. As a result of Plaintiff's efforts, the quality of Plaintiff's Edward Wargo Products, the promotional efforts for Plaintiff's Products and designs, press and media coverage, and social media coverage, members of the public have become familiar with the Edward Wargo Works and associate it exclusively with Plaintiff. *Id.* at ¶ 14. Plaintiff has made efforts to protect Plaintiff's interests in and to the Edward Wargo Works. *Id.* at ¶ 15. No one other than Wargo and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the Edward Wargo Works without the express written permission of Plaintiff. *Id.*

On information and belief, the Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff Products. *Id.* at ¶ 6. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id.* at ¶ 7. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant online marketplace accounts (collectively, the "Defendant Internet Stores") identified in First Amended Schedule A. *Id.* at ¶¶ 2, 16. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Infringing Edward Wargo Products to consumers within the United States, including the State of Illinois. *Id.*

Plaintiff filed this action on November 19, 2025, alleging Copyright Infringement and seeking statutory damages and injunctive relief. [1]. This Court granted Plaintiff's *Ex Parte* Motion

2

for Entry of a Temporary Restraining Order (the "TRO") on December 12, 2025 [22] and subsequently converted the TRO into a Preliminary Injunction on January 8, 2026. [35]. Paragraph 7 of the TRO permitted Plaintiff to complete service of process to Defendants by electronic publication or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Edward Wargo and any e-mail addresses provided for Defendants by third parties. The Defendants identified in First Amended Schedule A that are associated with Amazon Payments, Inc. ("Amazon"), Temu, LLC ("Temu"), and Walmart Inc. ("Walmart") accounts were properly served on December 24, 2025. [30]. None of the Defaulting Defendants have entered an appearance or otherwise defended this action. *See* Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on Count I of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). The Court denied Plaintiff's prior motion for default judgment without prejudice and granted leave to refile. [57]. Plaintiff now renews that motion; as shown below and in the accompanying Declaration of Yanling Jiang and Exhibits A and B, service is proper as to each Defaulting Defendant. Plaintiff further seeks an award of statutory damages as authorized by 17 U.S.C. §504(c)(2) for willful copyright infringement. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products, and that all assets in Defaulting Defendants' financial accounts operated by Amazon, Temu, and Walmart, as well as any newly discovered assets, be transferred to Plaintiff.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Products bearing infringing versions of Plaintiff's federally registered copyrights to residents of Illinois. [1] at ¶ 2. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See, e.g., NBA Properties, Inc. v. HANWJH,* No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see also, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259

(N.D. Ill. Dec. 11, 2025); *Catherine Frances Rayner v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-11809 (N.D. Ill. Dec. 11, 2025).

## II.    SERVICE OF PROCESS IS PROPER AS TO EACH DEFAULTING DEFENDANT UNDER *KANGOL*

The Seventh Circuit recently confirmed that the Hague Convention prohibits email service in China where the Convention applies, but that a district court must first determine whether the Convention applies at all. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793, 795-96 (7th Cir. 2026). The Convention does not apply "where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. The standard this District applies requires "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address," and is conjunctive: a plaintiff must not only ascertain a listed address but verify it, for "[b]are assertions regarding the reliability of [a] [d]efendant's publicly available address are not a substitute for actual diligence." *NBA Props., Inc. v. Partnerships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021). Where a plaintiff investigates the platform-disclosed address and cannot confirm it as a real, usable location connected to the defendant, the address is "not known" within Article 1. *Cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at 2 (S.D.N.Y. Oct. 26, 2022).

Article 1 also turns on the identity of the party to be served. Under PRC law, only a defendant's registered Chinese-character legal name, or the registered Chinese-character name of the natural person to be served, has legal status for a Central Authority request; a romanized or English-translated platform trade name is not the defendant's legal identity, and a Request naming a defendant only in that form is, as Aaron Lukken explains, "assured of failure" because the executing local intermediate people's court cannot reconcile a romanized identifier to a registered

5

entity in the SAMR registry.[1] This District measures diligence as of the time the plaintiff moves and requires that the showing be laid out in the motion itself. *See Deckers Outdoor Corp. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 2026 WL 1802901 (N.D. Ill. 2026). This memorandum and the accompanying Jiang Declaration supply that contemporaneous, defendant-by-defendant showing.

For every one of the fifty-one Defaulting Defendants, Plaintiff's investigation comprised: (a) cataloging the platform-disclosed address on Schedule A; (b) searching that address on five independent, publicly available resources — a Google web search, a Baidu web search, Google Maps, Baidu Maps (百度地图), and Amap (高德地图) — and capturing a screenshot of each; (c) checking the seller against the Tianyancha (天眼查) PRC business-registry database; and (d) decomposing each platform identifier against the four required SAMR name elements (行政区划, 字号, 行业表述, 组织形式). Jiang Decl. ¶¶ 3–8; Ex. A; Ex. B. As a native reader of Chinese familiar with PRC address structure and mapping services, Plaintiff's counsel read and interpreted the Chinese-language results and then recorded the per-defendant result for each. Jiang Decl. ¶¶ 4–5.

For all fifty-one Defaulting Defendants, each identified by Schedule number in Exhibits A and B, Plaintiff's investigation confirmed that the address is not known, based on two independent grounds. First, none of these platform identifiers supplies a registered Chinese-character legal name in the four-element SAMR structure. Instead, each is a romanized pinyin string, an arbitrary or English-fabricated storefront alias, or a partial trade name lacking the required components.

---

[1] Aaron Lukken, *Chinese Company Names, Flawed Addresses, and the High Likelihood of Hague Service Failure*, Hague Law Blog (Mar. 2024), https://www.haguelawblog.com/2024/03/chinese-company-names-flawed-addresses-and-the-high-likelihood-of-hague-service-failure/; see also Aaron Lukken, *A Hague-compliant roadmap for service on "Schedule A" defendants*, Hague Law Blog (July 2024).

6

Therefore, a Central Authority request naming any of them in its platform form is the pattern practitioner authority identifies as "assured of failure." Jiang Decl. ¶¶ 5–6; Exs. A, B. Second, and independently, each platform-disclosed address failed verification after reasonably diligent effort, in recurring patterns documented in the exhibits: addresses the searches did not locate at all; addresses resolving no lower than a broad district, township, or village rather than the stated street and unit; searches returning a different, unrelated establishment at the stated point; and units shown to be an "office-only" (仅限办公) registration or a shared workstation (工位) rather than the Defendant's own premises. Jiang Decl. ¶ 5; Ex. A. Each address was thus ascertained but could not be verified to a serviceable, defendant-connected location, and is "not known" within Article 1. *NBA Props.*, 549 F. Supp. 3d at 796; *Zuru*, 2022 WL 14872617, at 2. Either ground independently supports email service under Rule 4(f)(3).

Three of these Defendants state a Hong Kong address rather than a mainland one: Defendant Nos. 81 (BespokeShop), 107 (XGDDPW), and 108 (OpusMetal). For those three, the registry check runs through the Hong Kong Companies Registry rather than the SAMR/Tianyancha system, which returned no active entity reconcilable to the storefront at the stated address, confirming these addresses are also not known. Jiang Decl. ¶ 6; Ex. B (Nos. 81, 107, 108). Another Defendant, No. 94 (GS Warm decoration), carries no usable platform address at all (the platform states "N/A"); its address is not known *a fortiori*. Jiang Decl. ¶ 3; Ex. A (No. 94).

Because the address of each of the fifty-one Defaulting Defendants is not known, the Hague Convention does not apply and this Court's prior order authorizing service by electronic means supplies proper service. Plaintiff has therefore satisfied *Kangol* as to every Defaulting Defendant, and default judgment is appropriate.

### III. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On November 19, 2025, Plaintiff filed the Complaint alleging Copyright Infringement (Count I). [1]. The Defendants were properly served on December 24, 2025. [30]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

### IV. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

At least twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants identified in First Amended Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate and, consistent with previous similar cases in front of this Court, Plaintiff requests an award of statutory damages as authorized by 17 U.S.C. §504(c)(2) for willful copyright

infringement. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products, and an order that all assets in Defaulting Defendants' financial accounts operated by Amazon, Temu, and Walmart as well as any newly identified accounts be transferred to Plaintiff.

### A. Copyright Infringement

To properly plead a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff owns the registered copyrights in the Edward Wargo Works. [1] at ¶¶ 3, 5, 10. Plaintiff alleged in the Complaint that the Edward Wargo Works have been infringed. *Id*. at ¶¶ 17-22. Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Count I for willful copyright infringement against the Defaulting Defendants.

### B. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c)(1), a plaintiff in a case involving the use of a copyright infringement may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the

copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly but can be inferred from a defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (Finding that "[w]illful blindness is knowledge, in copyright law").

Here, Defendants had knowledge that their activities constituted infringement or at least a reckless disregard of Plaintiff's rights in the Edward Wargo Works because Defendants are intentionally coupling the Infringing Edward Wargo Products with goods derived from Plaintiff's copyrighted works. Thus, Plaintiff's request for a statutory damages award of one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement of the Edward Wargo Works is appropriate. *See, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025); *Catherine Frances Rayner v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-11809 (N.D. Ill. Dec. 11, 2025).

The USPTO's Office of Policy and International Affairs and the National Telecommunications and Information Administration ("NTIA") together working as part of the Department of Commerce's Internet Policy Task Force conducted a review of the relationship between the availability and protection of online copyrighted works and innovation in the internet

10

economy. The Internet Policy Task Force's White Paper on Remixes, First Sale, and Statutory Damages (White Paper) was published on January 28, 2016 (*see* Exhibit 1), which recognizes in copyright law that reduced damages may be warranted to avoid impeding new creative works, e.g., remixes – works created through changing and combining existing works to produce something new and creative – as part of a trend of user generated content. *Id*. at 98. However, in cases of willful infringement, such as before this Court, the same report finds that high statutory damages are warranted since "[t]hese circumstances present the clearest need for deterrence and punishment." *Id.* at 99. Moreover, regarding straight-out counterfeiting where impeding creativity is not a concern, The Office of the U. S. Trade Representative issued findings of the Special 301 Out-of-Cycle Review of Notorious Markets for 2015, December 2015 (*see* Exhibit 2), highlighted disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations.

Accordingly, a significant consideration should be whether infringing sales were made over the internet, the rationale being that sales over the internet increases the amount of an award because use of the internet made the infringement widely available. A finding of willful infringement is warranted along with an award of one hundred thousand dollars ($100,000) in statutory damages. *See, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025); *Catherine Frances Rayner v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-11809 (N.D. Ill. Dec. 11, 2025).

### C. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's

11

Edward Wargo Works, including at least all injunctive relief previously awarded by this Court to Plaintiff in the TRO and Preliminary Injunction. Plaintiff is also entitled to injunctive relief so Plaintiff can take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling infringing Edward Wargo Products. *See, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025); *Catherine Frances Rayner v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-11809 (N.D. Ill. Dec. 11, 2025).

## V.    CONCLUSION

Plaintiff respectfully requests that the court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of one hundred thousand dollars ($100,000) per Defaulting Defendant pursuant to 17 U.S.C. § 504(c)(2), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Infringing Edward Wargo Products and transferring all assets in Defaulting Defendants' financial accounts operated by Amazon, Temu, and Walmart to Plaintiff.

DATED: July 29, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
Email: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

12

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ *Keith A. Vogt*
Keith A. Vogt, Esq.

13